# United States Court of Appeals

## For the Eighth Circuit

_____

No. 25-2087

_____

Iowans for Alternatives to Smoking & Tobacco, Inc.; Global Source Distribution LLC; Wages and White Lion Investments, LLC, doing business as Triton Distribution; Smokin Hot LLC; Central Iowa Vapors WDM, LLC; Taste the Vape LLC, doing business as Route 69 Vapor; Martina Pagano; James Cole

*Plaintiffs - Appellees*

v.

Mary Mosiman, in her official capacity as the Director of the Iowa Department of Revenue

*Defendant - Appellant*

Iowa Department of Revenue

*Defendant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: January 15, 2026
Filed: July 30, 2026

_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

In 2024, the Iowa legislature enacted House File 2677 (HF 2677), which prohibits the manufacture and sale of electronic nicotine delivery systems in Iowa that have not yet received marketing authorization from the United States Food and Drug Administration (FDA). A coalition of e-cigarette manufacturers, retailers, and consumers (collectively, Iowans for Alternatives) sued the Iowa Department of Revenue and its Director, Mary Mosiman, arguing that HF 2677 is preempted by federal law and seeking a preliminary injunction. The district court granted the preliminary injunction, holding that Iowans for Alternatives was likely to succeed on the merits of its preemption claim. Mosiman appeals, and we vacate and remand.

## I.  Background

Electronic nicotine delivery systems (ENDS) heat a liquid solution containing nicotine to form an aerosol that a user inhales through a mouthpiece. U.S. Food & Drug Admin., E-Cigarettes, Vapes, and other Electronic Nicotine Delivery Systems (ENDS), https://www.fda.gov/tobacco-products/products-ingredients-components/e-cigarettes-vapes-and-other-electronic-nicotine-delivery-systems-ends [https://perma.cc/3JNU-5TD5]. ENDS products include vaping devices, hookah pens, and electronic cigarettes. *Id.* ENDS products are regulated by the FDA under the Family Smoking Prevention and Tobacco Control Act (TCA), which is codified as subchapter IX of the Food, Drug, and Cosmetic Act (FDCA). *See* Deeming Tobacco Products to be Subject to the Federal Food, Drug, and Cosmetic Act, 81 Fed. Reg. 28974–75 (May 10, 2016) (to be codified at 21 C.F.R. pts. 1100, 1140, 1143); *see also* 21 C.F.R. §§1100.1, .3 (2025). ENDS products must receive premarket authorization from the FDA before being sold, manufactured, or marketed. *See* 21 U.S.C. §§ 331, 387b(6)(A), 387j. The sale, manufacture, or marketing of unauthorized ENDS products is illegal under federal law, and it can result in a civil monetary penalty, injunction, seizure, or criminal prosecution. *See* 21 U.S.C. §§ 331–334. Nonetheless, unauthorized ENDS products are widely available because the FDA has adopted a deferred, case-by-case enforcement regime because it "lacks

the resources to pursue enforcement against every product that has not yet received authorization" and it recognizes that combustible cigarettes may pose more significant public health and safety concerns. U.S. Food & Drug Admin., *Enforcement Priorities for Certain New Tobacco Products Marketed Without Premarket Authorization: Guidance for Industry* 4 (2026).

In May 2024, to supplement FDA enforcement, Iowa passed HF 2677, which creates a directory of ENDS products that may be lawfully sold in Iowa. Regulation of Vapor Products, 2024 Iowa Acts, ch. 1180, sec. 4 (codified at Iowa Code § 453A.52). For an ENDS product to be placed on Iowa's vapor products directory, its manufacturer must be in full or partial compliance with the TCA's premarket authorization requirements. Specifically, an ENDS product manufacturer must certify, under penalty of perjury, that its ENDS product, whether sold directly or indirectly in Iowa, (1) received premarket authorization from the FDA under § 387j or (2) "was marketed in the United States as of August 8, 2016, [and] the vapor products manufacturer submitted a premarket tobacco product application . . . to the [FDA] . . . on or before September 9, 2020, and the application either remains under review . . . or a final decision . . . has not otherwise taken effect." Iowa Code § 453A.52(1)(a)–(b). It is illegal to sell or offer for sale an ENDS product in Iowa that is not included in the directory. *Id.* § 453A.52A(1)–(2). The director of the Iowa Department of Revenue is responsible for enforcing HF 2677. *Id.* §§ 453A.42(4), .49.

In December 2024, Iowans for Alternatives sued the Department and its director, Mary Mosiman, in her official capacity, alleging that HF 2677 violates the Supremacy Clause of the U.S. Constitution (the preemption claim), the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, and the Equal Protection Clause of the Iowa Constitution. Iowans for Alternatives simultaneously filed a motion for a preliminary injunction with its complaint. In February 2025, Iowans for Alternatives filed an amended complaint and a renewed motion for a preliminary injunction. While the renewed motion was pending, the Department voluntarily stayed enforcement of HF 2677. In April 2025, the district

court held a hearing on the motion, and, in May 2025, it granted the motion and preliminarily enjoined enforcement of HF 2677. In its order, the district court held Iowans for Alternatives has standing, is likely to succeed on the merits of its preemption claim, is unlikely to succeed on the merits on its Equal Protection claims, and that it was not required to post a security bond. The district court also dismissed Iowans for Alternatives' claims against the Department, determining the Department was entitled to Eleventh Amendment immunity. Mosiman timely appeals the district court's order, and we have jurisdiction under 28 U.S.C. § 1292(a)(1).

## II. Standard of Review

"We review a district court's ultimate ruling on a preliminary injunction for abuse of discretion, though we review its underlying legal conclusions de novo." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013). "A preliminary injunction is an extraordinary remedy, and the party seeking injunctive relief bears the burden of proving that these factors weigh in its favor." *Mgmt. Registry, Inc. v. A.W. Cos.*, 920 F.3d 1181, 1183 (8th Cir. 2019) (cleaned up). A plaintiff seeking a preliminary injunction of the implementation of a state statute must show (1) he is likely to succeed on the merits;[1] (2) he is likely to suffer irreparable harm; (3) the balance of the equities tips in his favor; and (4) that an injunction is in the public interest. *Wise v. Dep't of Transp.*, 943 F.3d 1161, 1165 (8th Cir. 2019) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "When a plaintiff seeks an injunction against the enforcement of a state statute, the plaintiff's failure to carry his burden on the likelihood-of-success factor is fatal to his case." *Eggers v. Evnen*, 48 F.4th 561, 566 (8th Cir. 2022).

---

[1]Normally, a party must show a "fair chance" of success on the merits. *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc). But "a party seeking a preliminary injunction of the implementation of a state statute" must meet a "more rigorous standard . . . showing that the movant 'is likely to prevail on the merits.'" *Id.* at 731–32 (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975)).

# III. Analysis

Mosiman argues the district court erred by finding that Iowans for Alternatives has Article III standing and by granting the preliminary injunction. Specifically, she argues the district court should not have granted the preliminary injunction because Iowans for Alternatives is not likely to succeed on the merits of its preemption claim. We hold that Iowans for Alternatives has standing but is not likely to prevail on the merits of its preemption claim.[2] As a result, we vacate the preliminary injunction and remand for further proceedings consistent with this opinion.

## A. Standing

We first address whether Iowans for Alternatives has Article III standing. *See Brown v. Medtronic, Inc.*, 628 F.3d 451, 455 (8th Cir. 2010) ("Federal courts must address questions of standing before addressing the merits of a case where standing is called into question."). We review standing de novo. *Dalton v. NPC Int'l, Inc.*, 932 F.3d 693, 695 (8th Cir. 2019).

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 at 560–61). The plaintiff bears the burden of establishing standing, and in cases like this, "when a group of plaintiffs share a consolidated complaint and hold nearly identical positions on an issue[,] only one plaintiff needs to" establish standing. *Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1071, 1078 (8th Cir. 2024) (cleaned up). At the motion to dismiss stage, "a plaintiff

---

[2]Mosiman also argues the district court abused its discretion by failing to weigh the non-merits injunction factors and by waiving an injunction bond. Our holding moots these arguments, so we do not address them.

need only 'allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that she satisfies the elements of Article III standing.'" *Johnson v. Griffin*, 69 F.4th 506, 510 (8th Cir. 2023) (quoting *Hawse v. Page*, 7 F.4th 685, 688–89 (8th Cir. 2021)). "[T]his pleading burden is 'relatively modest.'" *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 171 (1997)).

Mosiman argues that each of the plaintiffs lack standing. She primarily claims that none of the plaintiffs can plausibly allege an injury in fact because each "essentially complain[s] that HF[ ]2677 prevents them from violating federal law," and an interest in evading the law cannot create standing. We disagree because retailer plaintiffs — namely, Smokin Hot, L.L.C., Central Iowa Vapors WDM, LLC, and Taste the Vape LLC d/b/a Route 69 Vapor — have standing.

First, the retailers plausibly allege an injury in fact. In a preenforcement suit, an injury in fact is established where the plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979)). The retailers allege "HF 2677 injures [them] in that it forces [them] to st[o]p selling certain unauthorized ENDS products (including, but not limited to, unauthorized ENDS products containing non-tobacco-derived nicotine) even though [the] FDA may decide not to exercise its [enforcement discretion]."[3] More specifically, they allege HF 2677 requires them "to either run the risk of incurring substantial civil penalties for sales of vapor products not eligible for listing on the vapor products registry or shut down . . . ." Iowa has not disavowed its intention to enforce HF 2677, so the retailers' fear of

---

[3]To the extent Mosiman argues the retailers do not have a legally cognizable injury in fact because their conduct is still illegal under federal law, we are not persuaded. "[T]his case is not similar to decisions [Mosiman] cites involving drivers running red lights or traffickers of illegal narcotics." *Wisconsinites for Alts. to Smoking & Tobacco, Inc. v. Casey*, 172 F.4th 976, 982 (7th Cir. 2026) (rejecting same arguments).

enforcement is "objectively reasonable," *Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 719 (8th Cir. 2021), not "imaginary or wholly speculative." *Driehaus*, 573 U.S. at 160 (quoting *Babbitt*, 442 U.S. at 302). And their injuries are "affected with a constitutional interest by virtue of [their] federal preemption claim, which is 'basically constitutional in nature' because it 'deriv[es] its force from the operation of the Supremacy Clause.'" *McKee Foods Corp. v. BFP, Inc.*, 173 F.4th 242, 258 (6th Cir. 2026) (quoting *Douglas v. Seacoast Prods., Inc.*, 431 U.S. 265, 271–72 (1977)). In other words, their "claim[s] rel[y] on constitutional protections and the constitutionality of [Mosiman's] conduct." *Id.*; *see also Am. Farm Bureau Fed'n v. EPA*, 836 F.3d 963, 968 (8th Cir. 2016) ("In assessing a plaintiff's Article III standing, we must 'assume that on the merits the plaintiffs would be successful in their claims.'" (quoting *Muir v. Navy Fed. Credit Union*, 529 F.3d 1100, 1105 (D.C. Cir. 2008))).

Next, the retailers plausibly allege traceability. To establish traceability, a plaintiff must show a "causal connection between the injury and the conduct complained of . . . ." *Lujan*, 504 U.S. at 560. Phrased differently, the injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (cleaned up). The retailers allege their injuries are a direct consequence of HF 2677's enforcement, and defendant Mosiman has the power to enforce the law. Therefore, they have established traceability. *See Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 779 (8th Cir. 2019) ("Typically, we have considered an injury to be 'fairly traceable' where 'the named defendants . . . possess the authority to enforce the complained-of provision.'" (quoting *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015))).

Last, the retailers plausibly allege redressability. Redressability is "a likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). Causation and redressability "are often 'flip sides of the same coin.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269,

288 (2008)). "If a defendant's action causes an injury, enjoining the action . . . will typically redress that injury." *Id.* at 381. So for the same reasons discussed above, enjoining enforcement of HF 2677 would eliminate the looming threat of civil penalties.[4]

In conclusion, for the reasons explained above, we have jurisdiction to address the merits of the appeal because at least one plaintiff has Article III standing.[5]

## B. Preemption

The central question raised by this appeal is whether the district court erred by preliminarily enjoining enforcement of HF 2677 based on its conclusion that Iowans for Alternatives is likely to succeed on the merits of its preemption claim. Mosiman argues Iowans for Alternatives cannot succeed on the merits of its claim because Congress has not preempted Iowa's inherent authority to regulate tobacco product sales, and any overlap between HF 2677 and the FDA's premarket approval process does not trigger obstacle preemption. By contrast, Iowans for Alternatives argues that 21 U.S.C. § 337(a), the TCA's "implied preemption provision," "preempts H.F. 2677's attempt to step into the shoes of the FDA and indirectly enforce the premarket requirements that the FDCA imposes . . . on tobacco products." Section 337(a) provides as follows: "Except as provided in subsection (b), all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States." According to Iowans for Alternatives, § 337(a) is an exclusive enforcement clause that implicitly bars the states from prosecuting violations of the TCA, including violations of the FDA's

---

[4]We emphasize that a plaintiff must show "that a favorable decision will relieve *a discrete injury* to himself" and "need not show that a favorable decision will relieve his *every injury*." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) (emphasis added). Because an injunction would redress at least one of the enforcement threats the retailers face, there is redressability.

[5]We, therefore, will not address the parties' other standing arguments.

premarket authorization and review requirements. *See* § 387j. The district court agreed, reasoning that HF 2677 is "parasitic on the FDCA" and "effectively transfers the FDA's enforcement discretion to the state," triggering obstacle preemption.[6] But we agree with Mosiman. HF 2677 is not preempted.

### i. The Law of Preemption

We review whether a law is preempted de novo. *R.J. Reynolds Tobacco Co. v. City of Edina*, 60 F.4th 1170, 1174 (8th Cir. 2021). "The general law of preemption is grounded in the Constitution's command that federal law 'shall be the supreme Law of the Land.'" *In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Pracs. Litig.*, 621 F.3d 781, 791 (8th Cir. 2010) (quoting U.S. Const. art. VI, cl. 2). "Thus state law that conflicts with federal law has no effect." *Id.* (quoting *Jones v. Vilsack*, 272 F.3d 1030, 1033 (8th Cir. 2001)). But absent federal law to the contrary, the states retain their inherent sovereign power to regulate their own citizens. *See* U.S. Const. amend. X.

"Supreme Court precedent establishes a preemption taxonomy," consisting of several varieties of preemption. *Zyla Life Scis., L.L.C. v. Wells Pharma of Hou., L.L.C.*, 134 F.4th 326, 328 (5th Cir. 2025). Relevant here, conflict preemption arises when state law imposes a duty that is inconsistent with federal law. *Murphy v. NCAA*, 584 U.S. 453, 477–78 (2018). Conflict preemption is divided into two types: impossibility preemption and obstacle preemption. *See LeFaivre v. KV Pharm. Co.*, 636 F.3d 935, 939 (8th Cir. 2011). Obstacle preemption, at issue in this case, "exists where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Pharm. Rsch. & Mfrs. of Am. v. McClain*, 95 F.4th 1136, 1144 (8th Cir. 2024) (quoting *Crosby v. Nat'l Foreign Trade*

---

[6]This specific type of preemption has several names: obstruction preemption, *LeFaivre v. KV Pharm. Co.*, 636 F.3d 935, 939 (8th Cir. 2011); purposes-and-objectives preemption, *Fulgenzi v. PLIVA, Inc.*, 711 F.3d 578, 585–86 (6th Cir. 2013); and obstacles-and-purposes preemption, *Zyla Life Scis., L.L.C. v. Wells Pharma of Hou., L.L.C.*, 134 F.4th 326, 328 (5th Cir. 2025).

*Council*, 530 U.S. 363, 373 (2000)). "What qualifies as 'a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects.'" *Id.* (quoting *Crosby*, 530 U.S. at 373). We address obstacle preemption by considering "the entire scheme of the statute," and whether the "purpose of the act cannot otherwise be accomplished" without preemption. *Crosby*, 530 U.S. at 373 (quoting *Savage v. Jones*, 225 U.S. 501, 533 (1912)). The burden to prove a state law is preempted rests with the proponent of preemption — here, Iowans for Alternatives. *See City of Edina*, 60 F.4th at 1175.

Regardless of the type of preemption, two fundamental principles guide our analysis. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). First, "we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Second, "our analysis of the scope of the statute's pre-emption is guided by [the] oft-repeated comment . . . that '[t]he purpose of Congress is the ultimate touchstone' in every pre-emption case." *Id.* (quoting *Retail Clerks Int'l Ass'n, Loc. 1625 v. Schermerhorn*, 375 U.S. 96, 103 (1963)). And in this case, we also consider obstacle preemption. We address these three concepts in turn below.

### ii.  Presumption Against Preemption

First, as Mosiman contends, the presumption against preemption applies here. "Throughout our history the several States have exercised their police powers to protect the health and safety of their citizens." *Lohr*, 518 U.S. at 475. "Primarily, and historically," health and safety are "matters of local concern," so states have retained "great latitude under their police powers to legislate" in these areas. *Id.* (cleaned up). Accordingly, "[s]ince the early 1900s, state and local authorities have enacted public health measures directed at the dangers of tobacco use." *City of Edina*, 60 F.4th at 1176. HF 2677 is a manifestation of Iowa's traditional police power to regulate the health and safety of its citizens. *See id.* at 1176–77 (concluding

-10-

that state sales restrictions and bans on flavored tobacco products are examples of traditional state power). HF 2677 does not trample on areas that are uniquely federal or on interstate matters. *Cf. Arizona v. United States*, 567 U.S. 387, 401–02 (2012) (holding that alien registration was a field historically occupied by federal law). As a result, we apply the presumption against preemption and will only find the law preempted if Congress provided a "clear and manifest purpose." *Lohr*, 518 U.S. at 485.

### iii.   Congress's Purpose

Next, we examine Congress's purpose in passing the TCA and the TCA's preemption provisions. *See Wyeth*, 555 U.S. at 565; *see also U.S. Smokeless Tobacco Mfg. Co. v. City of New York*, 708 F.3d 428, 432 (2d Cir. 2013) ("Where, as here, Congress has specifically addressed the preemption issue, our task is primarily one of interpreting what Congress has said on the subject."). Mosiman argues that HF 2677 does not frustrate Congress's purpose, and Congress did not clearly or manifestly intend to preempt state tobacco regulation. We agree.

In June 2009, Congress passed the TCA to address "issues of particular concern to public health officials, especially the use of tobacco by young people and dependence on tobacco." Family Smoking Prevention and Tobacco Control Act, Pub. L. No. 111-31, § 3(2), 123 Stat. 1776, 1781 (2009). Congress empowered the FDA to regulate the "manufacture, marketing and distribution of tobacco products . . . ." *Id.* § 3(1). Congress also found it "essential that the [FDA] review products sold or distributed for use to reduce risks or exposures associated with tobacco products" and "manufacturers, prior to marketing such products, be required to demonstrate that such products will meet a series of rigorous criteria . . . ." *Id.* § 2(36), 123 Stat. at 1779. The TCA, however, inherently conflicts with the state's traditional power to regulate public health. *See City of Edina*, 60 F.4th at 1176–77. So to "[t]o achieve national uniformity while still respecting States' police power, the [TCA] has three sections relating to preemption: the Preservation Clause, the

Preemption Clause, and the Savings Clause." *Id.* at 1173; *see also* 21 U.S.C. § 387p(a)(1)–(2).

The Preservation Clause, § 387p(a)(1), allows "states and cities . . . to go above and beyond the requirements of the TCA to curb tobacco use." *City of Edina*, 60 F.4th at 1174. In other words, state laws that are "more stringent than" the TCA's provisions are not preempted and may remain in effect. § 387p(a)(1). But the following Preemption Clause "limits that general principle," *City of Edina*, 60 F.4th at 1174, if the state regulation involves "product standards, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products." § 387p(a)(2)(A). However, the Savings Clause, § 387p(a)(2)(B), qualifies the scope of the Preemption Clause. *City of Edina*, 60 F.4th at 1174. It states that the Preemption Clause "does not apply to requirements relating to the sale, distribution, possession, information reporting to the State, exposure to, access to, the advertising . . . or use of, tobacco products." § 387p(a)(2)(B). As a result, a state tobacco regulation that is framed as a "sales ban" would not be preempted because it falls under the Savings Clause. *See id.*

Under this tripartite framework, HF 2677 is not expressly preempted. First, HF 2677 is preserved under the Preservation Clause because it imposes more stringent requirements than the TCA. For example, HF 2677 not only requires tobacco manufacturers to certify that they have complied with TCA premarket authorization requirements, but it also requires manufacturers to submit a certification form listing each vapor product to be sold, pay a $100 fee per product, and appoint and engage an agent for service of process in Iowa. §§ 453A.52(2)–(3), .52D. Second, HF 2677 is covered by the Preemption Clause because it involves "premarket review." § 387p(a)(2)(A). And third, HF 2677 is saved under the Savings Clause because it is a "requirement[] relating to the sale, distribution, . . . [and] information reporting to the State . . . [of] tobacco products . . . ." § 387p(a)(2)(B). Therefore, under the plain text of the TCA, HF 2677 is not preempted.

Though Iowans for Alternatives seemingly acknowledges that HF 2677 fits within the Savings Clause, it argues that the TCA's preemption-related clauses do not affect the ordinary working of conflict preemption principles under *Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000), and *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001). But neither *Geier* nor *Buckman* apply.

In *Geier*, the Supreme Court addressed whether a tort action, in which the plaintiff claimed that an automobile manufacturer had a state-law duty to install airbags — a specific type of passive passenger restraint — was preempted by federal law, which allowed automobile manufacturers to choose among a variety of passive passenger restraints. 529 U.S. at 874–76. The Court concluded the tort action was preempted because recognizing plaintiff's cause of action would effectively require manufacturers to install airbags, frustrating Congress's expressed intent to provide automobile manufacturers with several choices of passenger restraint systems. *Id.* at 878–79, 881 (finding that Congress intended to "develop data on comparative effectiveness" of different passive restraints and to "facilitate the development of alternative, cheaper, and safer passive restraint systems"). Here, by contrast, there is no evidence that Congress intended to encourage similar experimentation in the ENDS industry. So Congress's intent would not be frustrated by HF 2677.

Equally dissimilar, *Buckman* held that state-law-created fraud claims against medical manufacturers, who allegedly falsified FDA submissions, were preempted. 531 U.S. at 344. The Court explained, "State-law fraud-on-the-FDA claims inevitably conflict with the FDA's responsibility to police fraud consistently with the Administration's judgment and objectives" and "complying with the FDA's detailed regulatory regime in the shadow of 50 States' tort regimes will dramatically increase the burdens facing potential applicants — burdens not contemplated by Congress in enacting the FDCA . . . ." *Id.* at 350. In short, "*Buckman* had nothing to do with state law mirroring federal requirements; the state law at issue was ordinary, generally applicable fraud." *Zyla*, 134 F.4th at 337; *Wisconsinites for Alts. to Smoking & Tobacco, Inc. v. Casey*, 172 F.4th 976, 987–88 (7th Cir. 2026). Instead, there, the relevant state law claims allowed private plaintiffs to prove the FDA had

been defrauded, thereby undermining the FDA's issuance of medical device approvals. *See Buckman*, 531 U.S. at 351; *id.* at 354 (Stevens, J., concurring in the judgment). By contrast, HF 2677 requires ENDS product manufacturers and retailers to certify that they have complied with FDA requirements. Consequently, HF 2677 promotes, not undermines, the FDA's premarket approval process.

All in all, statutory text "necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). Here, Congress provided a preemption carve-out for state sales restrictions, like HF 2677, that impose *more stringent* requirements on tobacco manufacturers and retailers. *See R.J. Reynolds Tobacco Co. v. County of Los Angeles*, 29 F.4th 542, 560 (9th Cir. 2022) ("[A] state can place restrictions on the retail sale of a tobacco product, including banning its sale altogether."). The enactment of the preemption provisions post-dates the so-called exclusive enforcement clause, signaling that Congress did not intend for the clear preemption exceptions to yield to ambiguous assertions of exclusive federal enforcement. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation."); *see also Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 583 U.S. 109, 128 (2018) ("Absent clear evidence that Congress intended this surplusage, the Court rejects an interpretation of the statute that would render an entire subparagraph meaningless."). The Savings Clause likewise serves Congress's stated purpose for enacting the TCA because supplemental state laws reduce the presence of harmful tobacco products in the marketplace. And Iowans for Alternatives has not provided us with a convincing reason to assume Congress's purpose would be frustrated by duplicative state enforcement — particularly because the FDA has repeatedly noted its limited enforcement resources.

### iv.  Obstacle Preemption

Last, Mosiman argues that HF 2677 is not implicitly preempted because it does not create an obstacle to Congress's intentions. Conversely, Iowans for Alternatives argues obstacle preemption applies because HF 2677 expressly

incorporates the TCA into state law, trampling on the FDA's enforcement discretion. The district court agreed with this conclusion. We do not.

Generally, a state law that directly replicates a federal law does not create implied conflict preemption. Instead, by replicating federal law, the state "recognizes the supremacy of the national law and conforms to it." *Asbell v. Kansas*, 209 U.S. 251, 258 (1908). So by demanding conformity with the TCA's premarket authorization requirements, HF 2677 neither conflicts with nor presents an obstacle to any federal law. *See Zyla*, 134 F.4th at 332.

This is not a novel conclusion. In *California v. Zook*, the Supreme Court analyzed a California statute that prohibited "the sale or arrangement of any transportation over the public highways of the State if the transporting carrier ha[d] no permit from the Interstate Commerce Commission." 336 U.S. 725, 726 (1949). California's statute mirrored federal law, which required carriers to obtain the same permit while operating in interstate commerce. *Id.* at 726–27, 727 n.2. Two men violated the California statute and, in their defense, argued it was preempted because California impermissibly "entered an exclusive congressional domain" — namely, interstate commerce. *Id.* at 727. The Court disagreed. The Court held the California statute was not preempted by federal law because "there is no conflict in terms, and no possibility of such conflict, for the state statute makes federal law its own in this particular." *Id.* at 735. By doing so, the Court discounted a "'coincidence means invalidity theory,'" particularly when the state law is an exercise of the state's traditional police powers. *Id.* at 732–35; *see also id.* at 738 ("[T]he State may punish as it has in the present case for the safety and welfare of its inhabitants; the nation may punish for the safety and welfare of interstate commerce. There is no conflict.").

Here, *Zook* controls, and the same conclusion applies. Like the California statute in *Zook*, HF 2677 expressly incorporates federal law, i.e., the TCA's premarket authorization requirements. Though it adds additional requirements, HF 2677 does not require ENDS product manufacturers or retailers to deviate from

federal law. *See Forest Park II v. Hadley*, 336 F.3d 724, 734 (8th Cir. 2003) (explaining that implied conflict preemption occurs when state laws "place additional requirements on federal[ly regulated entities], restrict the exercise of the [entities'] federally granted . . . rights, or create delays in the [federal] process . . . ."). Instead, HF 2677 mirrors federal law; compliance with the TCA is a precondition for compliance with HF 2677.[7] So because there is no conflict between the state and federal laws, there is no form of implied conflict preemption. *See Casey*, 172 F.4th at 988.

Even more significantly, Iowans for Alternatives conflates federal enforcement priorities with federal law. Rather than arguing that Congress's intention would be frustrated, Iowans for Alternatives argues the FDA's purpose would be hindered. Specifically, Iowans for Alternatives claims that the FDA's case-by-case, discretionary ENDS enforcement scheme reflects a strategic preference to prosecute only some TCA violations to preserve the existence of less harmful, noncombustible cigarettes in the marketplace. But even assuming that is true, "the possibility that federal enforcement priorities might be upset is not enough to provide a basis for preemption. The Supremacy Clause gives priority to 'the Laws of the United States,' not the . . . law enforcement priorities or preferences of federal officers." *Kansas v. Garcia*, 589 U.S. 191, 212 (2020) (quoting U.S. Const. art. VI, cl. 2); *see also Wyeth*, 555 U.S. at 587–88 (Thomas, J., concurring in the judgment) ("[A]gency musings . . . do not satisfy the Article I, § 7, requirements for enactment of federal law and, therefore, do not pre-empt state law under the Supremacy Clause"). So although the FDA has implemented a discretionary ENDS enforcement scheme, it does not follow that Congress intended to allow violations of its own duly

---

[7]To be clear, Iowans for Alternatives concedes that HF 2677 "directly cross-references and incorporates 21 U.S.C. § 387j, the premarket review provision of the FDCA for tobacco products," and HF 2677 "compels full or partial compliance with section 387j's premarket review requirements . . . ."

enacted laws.[8] And we decline to interpret the TCA to negate its own stated purpose. *See N.Y. State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 419–20 (1973).

Therefore, the district court erred by determining that Iowans for Alternatives is likely to prevail on the merits of its preemption claim. As a result, we do not address the other preliminary injunction factors. *See Eggers*, 48 F.4th at 566.

## IV. Conclusion

For the reasons explained above, we vacate the district court's order and remand for further proceedings consistent with this opinion.

LOKEN, Circuit Judge, concurring.

This is a difficult and important case. I agree with the court that at least one plaintiff has Article III standing and therefore concur in Part III.A. of the opinion.

I also agree with the Preemption analysis in Parts III.B.i.-iii. and with the conclusion that the order granting plaintiffs a preliminary injunction should be vacated because the Iowans for Alternatives plaintiffs have not shown they are likely to succeed on the merits of their preemption claim. But I do not agree that "HF 2677 is not preempted," *supra* at 9, and I do not agree with the conclusion in Part III.B.iv. that *California v. Zook*, 336 U.S. 725 (1949), is controlling on the question whether HF 2677 is preempted by what is known as "obstacle preemption," *supra* at 14-17. In my view, to resolve that issue requires a far more extensive record, including evidence of how Iowa intends to enforce this open-ended statute, and how that will affect FDA's *exclusive* federal statutory authority to enforce the TCA, *see* 21 U.S.C. § 337(a). In other words, as in *R. J. Reynolds Tobacco Co. v. City of*

---

[8]In fact, the FDA guidance cited by Iowans for Alternatives states, "[T]his guidance[] do[es] not establish legally enforceable responsibilities," and it is "not binding on the FDA or the public." U.S. Food & Drug Admin., *supra*, at 2.

*Edina*, 60 F.4th 1170, 1179 (8th Cir. 2023), the record before us does not permit us to conclude whether HF 2677 "conflicts with or imposes an obstacle to Congress's purpose and objectives in enacting the TCA." Accordingly, as to Part III.B., I concur in the judgment.

_____